[Cite as *State ex rel. Wolosyn v. Indus. Comm.*, 2020-Ohio-460.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Angela M. Wolosyn, | : | |
| Relator, | : | |
| v. | : | No. 18AP-595 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on February 11, 2020

*Grubb & Associates, LPA, Natalie F. Grubb,* and *Mark E. Owens,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Roetzel & Andress Co. LPA,* and *Morris L. Hawk,* for respondent Samaritan Care Center.

IN MANDAMUS

BRUNNER, J.

{¶ 1} Relator, Angela M. Wolosyn, filed this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio (the "commission"), to vacate its order which awarded her a six percent permanent partial disability ("PPD"), relying in part on the report of David Garcia, D.O. Wolosyn requests that this Court order the commission to redetermine the percentage of her PPD award after excluding Dr. Garcia's report from evidentiary consideration and considering instead other evidence she provided, including the report of Dr. James O'Reilly.

{¶ 2} In accord with Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate of this Court who issued on September 24,

2019 the appended decision, which included findings of fact and conclusions of law. The magistrate found that Wolosyn has not demonstrated the commission abused its discretion by considering Dr. Garcia's report. The magistrate has concluded, therefore, that the commission was able to consider the reports of both Dr. Garcia and Dr. O'Reilly and did not abuse its discretion when it awarded Wolosyn a percentage of PPD based on a number that fell between the numbers reported by those two physicians. Accordingly, the magistrate has recommended that we deny Wolosyn's request for a writ of mandamus.

{¶ 3} Wolosyn has not filed any objection to the magistrate's decision.

{¶ 4} Based on our review of the magistrate's decision and our independent review of the record, we find the magistrate has properly stated the pertinent facts and applied the appropriate law. We adopt the magistrate's decision as our own, including the findings of facts and conclusions of law in that decision. Accordingly, Wolosyn's petition for a writ of mandamus is denied.

*Petition for writ of mandamus denied.*

BROWN and LUPER SCHUSTER, JJ., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Angela M. Wolosyn, | : | |
| Relator, | : | |
| v. | : | No. 18AP-595 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on September 24, 2019

*Grubb & Associates, LPA, Natalie F. Grubb,* and *Mark E. Owens,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Roetzel & Andress Co. LPA,* and *Morris L. Hawk,* for respondent Samaritan Care Center.

IN MANDAMUS

{¶ 5} Relator, Angela M. Wolosyn, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded her a 6 percent permanent partial disability ("PPD") award relying on the report of David Garcia, D.O., and ordering the commission to redetermine the matter after excluding Dr. Garcia's report from evidentiary consideration.

Findings of Fact:

{¶ 6}   1. On November 29, 2016, relator sustained a work-related injury while employed as a State Tested Nurse Aide for respondent Samaritan Care Center ("Samaritan").  Relator was helping a resident to the bathroom when she complained of pain in her lower back.

{¶ 7}   2. That evening, relator reported to the emergency room complaining of "sharp stabbing pain in her left lumbar region [which was] radiat[ing] to the other side of the back."  Relator indicated she had "no pain radiating down her leg" and while she had a previous thoracic back injury, she had no previous lumbar injuries.  Relator was diagnosed with "acute lumbosacral strain" and she was told to stay off work for two days.

{¶ 8}   3. Relator was seen by David Goff, D.O., on December 1, 2016.  Relator described the initial pain as sharp and stabbing and noted that it had been decreasing in intensity.   Relator denied numbness, tingling, weakness, radicular symptoms, or bowel/bladder dysfunction, and indicated her pain ranged from a two out of ten with rest to a seven out of ten with any type of physical activity.  Dr. Goff restricted relator to light duty and diagnosed her with a lumbosacral strain.

{¶ 9}   4. Relator returned to Dr. Goff on December 6, 2016.  At that time, relator indicated she had a 30 to 40 percent improvement, but continued to have moderate discomfort, especially with any type of bending.  Dr. Goff completed a C-9 form recommending 12 physical therapy sessions which were approved.

{¶ 10} 5. Relator returned to the emergency room on January 3, 2017 indicating that two days earlier her pain intensified and was now constant, sharp, and stabbing.  She indicated her pain level was a ten out of ten and she had no Vicodin left.

{¶ 11} 6. Relator was diagnosed with "acute exacerbation of a chronic lumbar strain."

{¶ 12} 10. Relator saw Dr. Goff the next day, January 4, 2017.  Relator told Dr. Goff her pain was improving, but she experienced some pain while performing twisting activities at work while trying to feed two residents that were on each side of her.  Relator rated her pain at a four out of ten on January 4, described it as a sharp pain to her mid low back that extends from her low back into her upper buttock bilaterally.  Dr. Goff continued to

diagnose her as suffering from a lumbosacral strain and indicated he would submit a C-9 for an MRI of the lumbar spine.

{¶ 13} 11. The MRI was performed on January 11, 2017, and was essentially negative.

{¶ 14} 12. Relator returned to Dr. Goff on January 31, 2017. At that time, she reported that her pain was a one out of ten, that she has been attending her physical therapy regularly, and she denied any "numbness, tingling, weakness, radicular symptoms, or bowel or bladder dysfunction." At that time, relator informed Dr. Goff that she had been let go from her job. Dr. Goff released her to return to work with restrictions and to see him again if she had any additional problems.

{¶ 15} 13. On July 31, 2017, relator completed a C-92 application for determination of percentage of PPD in the 2016 claim. In the section where she was asked to describe her disability, relator stated: "Strain of muscle, fascia and tendon thoracic thru sacral reg. Hard to stand for long periods of time and cannot lift without pain."[1]

{¶ 16} 14. The Ohio Bureau of Workers' Compensation ("BWC") scheduled an evaluation with Dr. Garcia to take place in August 2017.

{¶ 17} 15. At some point, relator returned to work with a different employer, Synergy Home Care. Relator completed a First Report of an Injury, Occupational Disease or Death ("FROI-1") indicating that, on August 11, 2017, she was assisting family members who were helping a client to stand when she noticed pain in her lower back. She was seen at the Summa Center for Corporate Health and was diagnosed with a lumbar strain.

{¶ 18} 16. Relator was seen by Linda F. Morway, M.D., following the new injury on August 11, 2017. Relator presented with "left-sided paralumbar pain after lifting a patient this morning"; she denied "any bowel or bladder dysfunction" and denied "any radiation down her leg." Relator reported that she "has had prior back injuries." Dr. Morway diagnosed relator with a lumbar strain and noted that she has had this before. Dr. Morway released relator to return to work with restrictions which included no bending, pushing, pulling, or lifting greater than ten pounds. Relator's August 11, 2017 injury would ultimately be allowed against a different employer, Synergy Home Care.

---

[1] This is the first reference in the medical records to any thoracic pain.

{¶ **19**} 17. Before she was examined by Dr. Garcia, relator submitted an FROI-1 concerning the August 11, 2017 injury sustained with her new employer.

{¶ **20**} 18. Dr. Garcia examined relator on August 30, 2017. At that time, relator informed him she had been injured while helping a resident to the bathroom. Relator denied any prior injuries to her back and did not inform Dr. Garcia that she had recently sustained a new injury to her back while working for a different employer. Relator described her pain as slight, occasional, and that the activities of daily living which were limited by her injury included sitting and bending.

Dr. Garcia provided the following physical findings on examination:

Examination of the thoracic region reveals no evidence of spinal listing. A normal kyphotic curvature is noted. No scarring is present. No change in skin temperature is noted. No swelling is noted. No tenderness is present with palpation to the region. No guarding or spasms are present. Sensation is intact. No radiculopathy is present. Range of motion reveals flexion to 60 degrees. Left rotation to 40 degrees. Right rotation to 40 degrees.

Examination reveals muscle strength of the upper extremities to be intact. Examination fails to reveal atrophy in arms, bilaterally. Sensory and motor are intact. Reflexes are intact.

Examination of the low back reveals no evidence of spinal listing. A normal lordotic curvature is noted. No scarring is present. The skin appears to be normal in color. No swelling is noted. No change in skin temperature is noted. Tenderness is present with palpation to the paraspinals bilaterally. No guarding or spasms are present. Radiculopathy is present; the injured worker complains of intermittent symptoms in the left lower extremity. Straight leg raise is negative. The injured worker offers no complaints in regard to bowel or bladder function. Range of motion of the lumbar region reveals: flexion equal to 60 degrees, extension equal to 10 degrees, left lateral bend equal to 15 degrees and right lateral bend equal to 15 degrees.

Examination reveals muscle strength of the lower extremities to be intact. Examination fails to reveal atrophy in the thigh or calf, bilaterally. Sensation is intact. Reflexes are intact. Toe standing and heel standing are intact. Gait is undisturbed. Stance and balance are stable.

Thereafter, Dr. Garcia provided the following impairment evaluation:

> For the condition(s) **STRAIN OF MUSCLE, FASCIA AND TENDON THORACIC THRU SACRAL REG** (Chapter 15, Page 373 to 431); Impairment of the thoracic spine based on the DRE Model: DRE Thoracic Spine Category II, **5%** WPI (pg. 389, table 15-4).
>
> Impairment of the lumbar spine based on the DRE Model: DRE Lumbar Spine Category II, 5% WPI (pg. 384, table 15-3). The impairment rating is apportioned to <u>0%</u> Whole Person Impairment for this claim as the loss of range of motion and abnormal physical findings are not related to the allowed condition. The allowed conditions should have resolved by now.
>
> **CONCLUSION:**
> Utilizing the Combined Values Chart on Page 604, the total equals: (5% WPI + 0% WPI) or 5% Whole Person Impairment.
>
> **Today's findings correlate to a total <u>5%</u> Whole Person Impairment for this claim.**

(Emphasis sic.)

{¶ 21} 19. Because relator had now sustained a second injury, Dr. Garcia was asked to provide an addendum report. In that report, dated December 8, 2017, Dr. Garcia explained the reasons for his addendum:

> It has been brought to my attention there is medical documentation in the file that was not available during my exam. It has been provided to me. In addition, please note the injured worked [sic] had an intervening injury and has not worked for the employer of records since January 2017. Furthermore, the injured worker has another claim 17-180387 with a date of injury 8/11/2017. I have been asked to opine whether this changes my opinion rendered on 8/30/2017.
>
> The following impairment evaluation has been revised from my original report dated 7/26/2017 to address the added medical information.
>
> Based on the new information provide my original impairment remains unchanged. Claim #17-180387 is allowed for STRAIN OF MUSCLE, FASCIA AND TENDON OF LOWER BACK. The 2016 claim was for a thoracic through sacral region. In my report, I apportioned the lumbar portion

> of my exam to 0% WPI based on the abnormal findings being unrelated to the 2016 injury. However, the 2017 claim does not include the thoracic ragion [sic]; therefore, I can only conclude the findings would be related to the 2016 injury.

(Emphasis sic.)

{¶ 22} Dr. Garcia noted that his findings did not change.

{¶ 23} 20. Relator submitted the December 14, 2017 report of Dr. James O'Reilly, Chiropractic Physician. Dr. O'Reilly diagnosed relator with thoraco-sacral strain and noted that the pain in relator's back travels into her left lower extremity. Thereafter, Dr. O'Reilly provided his physical findings upon examination and determined that relator had a 14 percent whole person impairment.

{¶ 24} 21. The matter was heard before a district hearing officer ("DHO") on February 22, 2018. The DHO relied on the reports of Drs. Garcia and O'Reilly and determined that relator had a 6 percent PPD.

{¶ 25} 22. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on April 10, 2018. The SHO affirmed the prior DHO order, relied on the reports of Drs. Garcia and O'Reilly, and found a 6 percent PPD.

{¶ 26} 23. Relator's request for reconsideration was denied by order of the commission mailed May 17, 2018.

{¶ 27} 24. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 28} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 29} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of

mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 31} As an initial matter, it is understood the commission does not abuse its discretion in adopting the percentage of disability that falls within the range suggested by two doctors. *See* for example, *State ex rel. Romero v. River City Drywall Supply, Inc.,* 143 Ohio St.3d 65, 2015-Ohio-1194, ¶ 19.

{¶ 32} Relator's entire argument focuses on her assertion that the report of Dr. Garcia does not constitute some evidence upon which the commission could properly rely to determine the percentage of her PPD award. Relator challenges the fact that, after determining that relator had a 5 percent lumbar whole person impairment, he then determined that, because that condition should have resolved, there was no residual impairment. Relator also challenges Dr. Garcia's report because he discussed radiculopathy when there is no mention of radiculopathy in the record.

{¶ 33} As noted in the findings of fact, relator did not tell Dr. Garcia that she had sustained a second work-related injury to her back while employed with a different employer. Likewise, relator did not tell Dr. O'Reilly that she had sustained a second injury to her back. As the commission notes, a review of the medical evidence establishes that relator did discuss radiculopathy. When Dr. Garcia examined her on August 30, 2017, he noted in his physical findings that "[r]adiculopathy is present; the injured worker complains of intermittent symptoms in the left lower extremity." Further, when she was examined by Dr. O'Reilly, she complained that "pain from her back travels into the left lower extremity." So, to the extent that relator challenges Dr. Garcia's report because he discusses radiculopathy, it is she who discussed radiculopathy during her visits with the doctor.

{¶ 34} Regarding Dr. Garcia's comment that relator's lumbar strain should have resolved, the magistrate notes that the MRI was essentially negative. Relator cites no medical evidence and no legal precedence that precludes a doctor from opining that a nine-month old muscle strain ought not to have resolved and causes no impairment.

{¶ 35} The real problem is that relator failed to notify either Drs. Goff or O'Reilly that she had an intervening injury. When she did so, Dr. Garcia opined that his opinion did not change: her pain was not related to the 2016 claim. Relator has not demonstrated the commission abused its discretion by considering Dr. Garcia's report. Having failed to do so, the commission was left with two reports and did not abuse its discretion when it awarded her a percentage of PPD based upon a number in between the numbers reported by the physician.

{¶ 36} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion and this court should deny her request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).